IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GARY NEUPAUER, JR. and
JEAN NEUPAUER, his wife
140 Coal Street
Plymouth, Pa 18651

   Plaintiffs

vs.    :  CIVIL ACTION - - LAW

THE UNITED STATES OF AMERICA
DEPARTMENT OF VETERANS
AFFAIRS
1111 East End Boulevard
Wilkes Bare, PA 18702

and

MARIE J. ADAJAR, M.D.
157 Bear Creek Blvd.
Wilkes Barre, PA 18702

and

MOHAMMAD A. SHAIKH, M.D.
34 Main Street, Apt 902
Wilkes Barre, PA 18701

   Defendants    :   NO. _____ of   2015

## COMPLAINT

AND NOW come, Gary Neupauer, Jr. and Jean Neupauer, by and through their counsel, Kevin P. Foley of The Foley Law Firm, P. C. and hereby file this within Complaint, against the following Defendants: United States of America, Marie J. Adajar, M.D. and Mohammad A. Shaikh, M.D. and respectfully avers as follows:

1. The Plaintiffs, Gary Neupauer, Jr. and Jean Neupauer, are adult citizens of the Commonwealth of Pennsylvania with a principal residence at 140 Coal Street, Plymouth, PA. 18651.

1. Pursuant to the Federal Torts Claims Act, on August 22, 2014 Plaintiffs' counsel submitted to the Department of Veterans Affairs a completed Standard Form 95 prescribed by the Department of Justice pursuant to 28 C.F.R. 14.2. Plaintiff has received written responses from the U.S. Department of Veterans Affairs Office of Regional Counsel Region IV, a Stephen M. Pahides, Staff Counsel for the Department of Veterans Affairs.

2. The Defendant, The United States of America, Department of Veterans Affairs, at all times relevant operated a Veterans Hospital located at 1111 Wilkes Barre Boulevard, Wilkes Barre, PA 18702.

3. The Defendant, Marie J. Adajar, M.D., with a last known address of 157 Bear Creek Boulevard, Wilkes Barre, PA 18702 upon information and belief is a physician licensed to practice medicine in the Commonwealth of Pennsylvania and was so engaged at all times mentioned herein and was an employee of the Defendant, The United States of America.

4. The Defendant, Mohammad A. Shaikh, M.D., with a last known address of 34 Main Street, Wilkes Barre, PA 18701 upon information and belief is a physician licensed to practice medicine in the Commonwealth of Pennsylvania and was so engaged at all times mentioned herein and was an employee of the Defendant, The United States of America.

5. At all times relevant, Plaintiff Gary Neupauer's doctors, including

Defendant Adajar held herself out to the general public including Plaintiffs, to be a competent, qualified and skilled physician in the specialty of internal medicine.

6. At all times relevant, Plaintiff Gary Neupauer's doctors including Defendant Shaikh held himself out to the general public including Plaintiffs, to be a competent, qualified and skilled physician in the specialty of thoracic and cardio vascular surgery.

7. At all times relevant, the Defendant, United States of America, Department of Veterans Affairs Hospital, held itself out as a qualified medical facility and held itself out that its agents, employees and servants including the Defendant Doctors, were competent, qualified and skilled and able to perform in the specialty of internal medicine and thoracic and cardio vascular surgery..

8. At all times relevant, Plaintiff, Gary Neupauer, was a patient of the aforementioned Defendants for all aspects of examination, treatment, care, custody, advice and information in medical control.

9. At all times relevant, it is believed and therefore averred that the Defendant Doctors held themselves out to the public in general and to the Plaintiffs that they were competent licensed medical doctors licensed to practice medicine in the Commonwealth of Pennsylvania.

10. Since at least October 1, 2013, Plaintiff, Gary Neupauer had sought medical treatment and medical care and advice from the Defendant, The United States of America, Department of Veterans Affairs Hospital, its agents, employees and/or servants.

11. Jurisdiction is conferred under the Federal Tort Claim Act, 28 U.S.C. 1346(b), 2671-2680 (1988) as amended.

12. At all times relevant hereto, Plaintiff, Gary Neupauer was a patient of the Defendant, The United States of America, Department of Veterans Affairs Hospital.

13. On or about October 1, 2013, the Plaintiff contacted Defendant Adajar at the Defendant Veterans Affairs Hospital with a chief complaint of cold feel to his left foot and progressive claudication over less than a block.

14. Defendant Adajar devised a plan of fasting labs and ancillaries then pcp s/p completion advising Plaintiff Gary Neupauer to return to the Defendant Veterans Affairs Hospital after completion of the studies.

15. On or about Friday, October 4, 2013 Plaintiff Gary Neupauer underwent a venous duplex scan and lower arterial Doppler performed by Defendant Doctor Shaikh at Defendant Veterans Affairs Hospital.

16. The venous duplex scan was negative for deep venous thrombus but the lower arterial Doppler demonstrated moderate stenosis in the left extremity which appeared to be evident in the left femoral iliac.

17. On or about October 8, 2013 Plaintiff Gary Neupauer received a chest xray. The reason for the study was "preop".

18. On or about Friday, October 11, 2013 Plaintiff Gary Neupauer presented to Defendant Veterans Affairs Hospital for evaluation of labs and complaining of progressive worsening of pain on the left lower extremity.

19. On or about October 11, 2013 Plaintiff Gary Neupauer complained of left foot pain with a pain scale of 10. Defendant Doctor Adajar noted "Pain is present even at rest with notable discoloration over left foot."

20. On or about October 11, 2013 Defendant Doctor Adajar requested a consult with Defendant Doctor Shaikh. Defendant Doctor Shaikh examined Plaintiff Gary Neupauer. Defendant Doctors Adajar and Shaikh agreed to do MRA ASAP.

21. On or about Tuesday, October 15, 2013 at 11:12 Plaintiff underwent a MRA at Defendant Veterans Affairs Hospital. Said MRA was read by Dr. Gerald Lee, M.D. at 14:44 on October 16, 2013.

22. The reason the MRA was not done prior to October 15, 2013 was due to the inaction or lack of attention of the Defendants, either individually or jointly and severally, and was not due to any act or failure to act on the part of the Plaintiff, Gary Neupauer.

23. On or about October 15, 2013 at 12:15 Plaintiff Gary Neupauer was examined by Sharon M. Duddy. Plaintiff Gary Neupauer's chief complaint was pain, edema, redness to left foot, unable to bear weight on foot. Her assessment included "edema, discoloration, ? pedal pulse. Patient presents in w/c." Plaintiff's pain scale was 10 in left foot, not relieved by Percocet.

24. On or about October 15, 2013 at 12:29 Plaintiff was examined by Defendant Doctor Shaikh. His examination revealed mild ischemia, no arterial pulses felt left foot. Defendant Doctor Shaikh noted the results of the MRA were not yet available and he would contact Plaintiff Gary Neupauer by phone when the results were received.

25. On or about October 15, 2013 at 12:45 Defendant Doctor Shaikh requested preop clearance within 72 hours for vascular surgery. The expected date of surgery is ASAP.

26. On or about October 15, 2013 at 13:29 Defendant Doctor Adajar completed the request for clearance stating the risk of cardiac or pulmonary problem is Low Risk.

27. On or about October 16, 2013 at 9:16 Plaintiff Gary Neupauer presented to Defendant Veterans Affairs Hospital. Sandra Salko documented complaints of pain 10/10 and worse left leg. "Takes Oxycodone which does not help."

28. On or about October 16, 2013 Plaintiff Gary Neupauer is seen by Dr. Julio A. Calderin at Vascular Surgery at the Defendant Veterans Affairs Hospital. He notes leg pain since one week of evolution. PE: Non palpable pulses with dependent rubor of left lower extremity and monophasic dopler signals. His impression was: long segment occlusion of the distal left superficial femoral artery, occlusion of the left entire anterior tibial artery, and occlusion of the left peroneal and posterior tibial arteries in the mid calf. "Male patient with **critical leg ischemia**. Patient will need angiogram and possible bypass of left lower extremity. Patient will be consulted to Manhattan VA ASAP".

29. Dr. Calderin requested the consult to Manhattan Vascular Surgery with an urgency of within 1 month on October 16, 2013 at 10:13. On October 24, 2013 an appointment was scheduled with Manhattan Vascular Surgery for November 5, 2013.

30. On or about October 16, 2013 15:38 Defendant Doctor Shaikh reviewed the results of the MRA performed on October 15, 2013 which revealed occluded left superficial femoral artery, branches of popliteal artery.

31. On or about October 16, 2013 at 16:34 Defendant Doctor Shaikh called Plaintiff Gary Neupauer at the telephone number listed. Nobody answered.

32. On or about October 16, 2013 at 10:52 Plaintiff Gary Neupauer presented to Geisinger Wyoming Valley Medical Center with a chief complaint of left leg dusky with pain. History of present illness noted among other things: Left lower extremity pain with one week history of progressively worsening "burning" pain to distal lower extremity, primarily left foot. ; Patient's left foot dusky, toes cold, some swelling, noting severe pain when bearing weight. Physical exam reveals left lower extremity cool- distally from mid shin distally- no capillary refill in toes- palpable femora pulse and dopplerable popliteal pulse of left leg but no dorsalis pedis or posterior tibial pulses dopplerable. Impression: **Acute ischemic left foot.** Plan: Admit to vascular surgery.

33. On or about October 16, 2013 at 11:45 am Plaintiff Gary Neupauer was examined by Shivprasad Nikam, M.D. who recommended Plaintiff Gary Neupauer be taken to the operating room now for urgent angiogram, possible angioplasty, possible thrombectomy, possible bypass. He discussed the impression and recommendations with Plaintiff and his son including possibility of amputation in the future.

34. On or about October 16, 2013 at 15:48 Plaintiff Gary Neupauer underwent abdominal aortoiliac angiography, selective third order catheterization of left lower extremity with left lower extremity angiography, placement of 6mm X 10 cm Smart self expanding stent into the left popliteal artery for 100% chronic total occlusion of the left above the knee popliteal artery and angiojet mechanical rheolytic thrombectomy and chemical thrombolysis using tPA, using Angiojet Solent Dista thrombectomy catheter in the posterior artery, chemical thrombolysis of the left anterior tibial and peroneal arteries

using 145 cm long infusion catheter with 20 cm long infusion tip. The operative findings were: Left popliteal artery in the above the knee segment had 100% occlusion for a distance of about 8 cm and the left anterior tibial, posterior tibial and peroneal arteries were patent in the proximal leg but were completely occluded in themed and distal leg without any contrast opacification of the left foot arteries. All three arteries shoed improved opacification up to the lower leg, however, there was still residual thrombus in the small branches of the tibial arteries in the foot. Postoperative findings included a well perfused right lower extremity with palpable pedal pulses. The left lower extremity had significantly improved capillary refill in the left foot, **though the toes still showed a blanched out appearance.** There was resolution of patient's rest pain.

35. On or about October 17, 2013 at 7:18 Plaintiff Gary Neupauer was examined by Dr. Nikam. Dr. Nikam noted Patient still has the distal forefoot duskiness representing the small vessel thrombosis that he had for over a week now. "Though he has had quite an improvement in circulation he has flare up of pain from ischemic neuropathy, likely with some irreversible effects. Unclear if toes and forefoot would demarcate over time and need amputation in the future."

36. On or about October 19, 2013 the 21:11 nursing note indicates toes are dusky and mottled. Patient does report that he does have feeling in 3 of the toes which he didn't have prior.

37. On or about October 21, 2013 at 7:56 am Dr. Nikam examines Plaintiff Gary Neupauer noting: "Left forefoot still remained dusky, but the area of duskiness has reduced to around the first 2 toes and the distal forefoot. He may still need some forefoot/toe amputation." Plaintiff was discharged home with a rolling walker.

38. On or about November 4, 2013 Plaintiff Gary Neupauer was seen by Dr. Nikam at Geisinger Medical Center Vascular/Endovascular Surgery Clinic. Physical exam revealed cyanosis with sloughing skin of the distal 1st toe and distal forefoot along medial side which was debrided along the plantar surface by Dr. Nikam with very healthy fresh skin underlying. Impression is left 1st toe/medial forefoot demarcating - terminal thrombosis of left first toe. The left forefoot has regained a lot of perfusion. The left 1st and 2nd toe will eventually declare if those would survive or demarcate as dry gangrene. Plan: Patient will very likely come to some sort of an amputation in the future – likely a 1st toe, possibly a 1st ray.

39. On or about December 3, 2013 Plaintiff Gary Neupauer underwent a left great toe ray amputation with sharp excisional debridement of gangrenous areas of the left foot. Plaintiff was discharged home on December 5 2013.

40. On or about January 4, 2014 Plaintiff Gary Neupauer underwent sharp excisional debridement of 50 square cm of left forefoot, pulsavac irrigation of the necrotic wound on left foot and placement of wound VAC 7cm X 5 cm X 3 cm in theleft foot wound.

41. On or about April 17, 2014 Plaintiff Gary Neupauer presented to Geisinger Medical Center Wyoming Valley Emergency Room with a chief complaint of left foot is red, swollen, warm and there is associated pain and draining since the amputation. Plaintiff was admitted to the hospital with a diagnosis of possible osteomyelitis. Plaintiff eventually underwent surgery on April 21, 2014 which resulted in amputation of the 2nd toe with removal of all bony structure and distal metatarsal resection. He was discharged with a PICC line for long term antibiotics.

42. It is believed and therefore averred that if appropriate medical care such as anti thrombolytics were instituted in October 11, 2013, by the Defendant Doctors Adajar and Shaikh, and/or other agents, employees, and/or servants of the United States Department of Veterans Affairs Hospital, Plaintiff Gary Neupauer would not have suffered the amputation of his 1st and 2nd toes on his left foot, nor would he have contracted osteomyelitis requiring long term antibiotic therapy. ,

43. Plaintiff Gary Neupauer's amputation and osteomyelitis were a direct and proximate result of the acts and/or inactions of the Defendants described in the foregoing and subsequent paragraphs.

44. Plaintiff Gary Neupauer's amputation and osteomyelitis were caused solely and exclusively by the careless, and negligent conduct of the Defendants and was not caused by any act or failure to act on the part of the Plaintiff Gary Neupauer.

45. As a direct and proximate result of the inaction of the Defendant Doctors, Marie Adajar, M.D. and Mohammad A. Shaikh, M.D. and/or other agents, employees, and/or servants of the United States Department of Veterans Affairs Hospital, they allowed the occlusion of the arteries in Plaintiff's left leg to progress leading to the amputation of Plaintiff's toes and osteomyelitis in Plaintiff's foot.

46. In addition to the allegations set forth herein, the negligence and recklessness of the Defendant Doctors, Marie Adajar, M.D. and Mohammad A. Shaikh, M.D. and/or other agents, employees, and/or servants of the United States Department of Veterans Affairs Hospital included the following:

    a. Failure to perform appropriate diagnostic testing in a timely manner;

    b. Failure to refer to a specialist;

    c. Failure to perform a MRA on October 11, 2013;

    d.    Failure to refer Plaintiff Gary Neupauer for appropriate treatment in a timely manner;

    e.    Failure to perform the MRA prior to October 15, 2013;

    f.    Failure to diagnose Plaintiff Gary Neupauer's occlusion of the left lower extremity arteries in a timely manner;

    g.    Failure to schedule surgery to address the occluded arteries in a timely manner;

    h.    Failure to timely administer anti thrombolytics in a timely manner;

    i.    Failure to admit Plaintiff Gary Neupauer in a timely manner;

    j.    Failure to set up medical monitoring by a qualified physician;

    k.    Failing to follow prescribed rules, regulations and policies and accepted medical standards and procedures in the care and treatment of the Plaintiff;

    l.    Failing to promulgate and implement sufficient rules, regulations and policies to ensure the delivery of competent medical services to the Plaintiff; ;

    m.    Failing to refer the Plaintiff for further treatment and/or diagnostic testing in a timely manner;

    n.    Failing to request consultations beyond the Defendant physicians' knowledge and ability to perform; and

    o.    Otherwise negligent as may be determined through the course of discovery.

47.    As a result of the negligence of Defendant Doctors, Marie Adajar, M.D. and Mohammad A. Shaikh, M.D., and the United States Department of Veterans Affairs Hospital, Plaintiff Gary Neupauer suffered amputation of left great and second toes, osteomyelitis, extreme emotional upset, loss of life's pleasures and extreme pain and suffering among other damages.

48.    As a direct and proximate result of the actions and/or inactions of the Defendants described in the foregoing and subsequent paragraphs, Plaintiff Gary

Neupauer suffered great physical pain, mental anguish, emotional distress and discomfort.

49. As a direct and proximate result of the actions and/or inactions of the Defendants, the Plaintiffs suffered financial losses including medical expenses that otherwise would not have been suffered.

50. At all times relevant and material hereto, the United States Department of Veterans Affairs Hospital represented to the public that Dr. Adajar and Dr. Shaikh were physicians who were licensed, qualified, competent, credentialed, and skilled at diagnosing and treating the Plaintiff Gary Neupauer's medical condition, capable of making the necessary referrals to other qualified specialists and ordering and interpreting diagnostic studies.

51. The United States Department of Veterans Affairs Hospital failed in the care and treatment of the Plaintiff Gary Neupauer by:

   a. Employing physicians and/or employees with knowledge of their lack of sufficient qualifications, capabilities or experience and/or failing to investigate or ascertain the extent of the same;

   b. Recommending, referring and holding out doctors, including, but not limited to, Dr. Adajar and Dr. Shaikh and other servants, agents, or employees, as being competent, knowledgeable and experienced specialists, capable of handling the Plaintiff Gary Neupauer's medical condition;

   c. Failing to require and direct the prompt and continuing review of the Plaintiff Gary Neupauer's medical condition;

   d. Failing to supervise and/or monitor the quality of care rendered by Dr. Adajar and Dr. Shaikh;

   e. Failing to supervise the quality, competence or skills of their doctors, including but not limited to, Dr. Adajar and Dr. Shaikh;

f. Failing to monitor and review the medical services provided by Dr. Adajar and Dr. Shaikh;

g. Failing to promulgate sufficient rules, regulations and policies to ensure the delivery of competent medical services to the Plaintiff Gary Neupauer;

h. Employing Dr. Adajar and Dr. Shaikh and/or other agents or servants with knowledge of their lack of sufficient qualifications, capabilities or experience and holding them out to the public and the Plaintiffs herein as being competent specialists, capable of diagnosing and treating the Plaintiff Gary Neupauer's medical condition; and

i. Otherwise negligent as may be determined through the course of discovery.

## COUNT I

### GARY NEUPAUER, JR.
### v.
### THE UNITED STATES OF AMERICA,
### MARIE ADAJAR, M.D. AND MOHAMMAD A. SHAIKH, M.D.

52. The allegations of the preceding paragraphs are incorporated by reference and made a part hereof as if herein set forth at length.

53. As a direct and proximate result of the conduct set forth herein, Plaintiff Gary Neupauer has sustained numerous injuries some or all of which may be permanent including but not limited to amputation of the 1st and 2nd toes on his left foot as well as osteomyelitis.

54. As a direct and proximate result of the conduct set forth herein, Plaintiff Gary Neupauer has been obligated to expend various and diverse sums of money in an effort to treat his injuries and will continue to be so obligated for an indefinite time into the future.

55. As a direct and proximate result of the conduct set forth herein, Plaintiff Gary Neupauer has suffered an inability to perform his usual daily duties and activities and will continue to be so disabled for an indefinite time into the future.

56. As a direct and proximate result of the conduct set forth herein, Plaintiff Gary Neupauer has suffered wage loss and incurred other incidental monetary losses and financial expenses and medical expenses and will continue to suffer such loses and damages for an indefinite time into the future.

57. As a direct and proximate result of the conduct set forth herein, Plaintiff Gary Neupauer has suffered serious impairment of bodily function, severe physical pain and suffering, mental anguish, emotional distress, discomfort, inconvenience, embarrassment, humiliation, disfigurement and loss of the ability to enjoy the pleasures of life and will continue to so suffer for an indefinite time into the future.

58. The aforementioned conduct and resulting injuries and losses were caused solely and exclusively by the gross, reckless, careless and negligent conduct on the part of the Defendants and were not caused in any way by any act or failure to act on the part of the Plaintiff, Gary Neupauer.

WHEREFORE, Gary Neupauer, Jr., demands judgment against the The United States of America, Department of Veterans Affairs, Marie Andajar, M.D. and Mohammad A. Shaikh, M.D. individually and/or jointly and severally in an amount in excess of Seventy-Five Thousand Dollars, ($75,000.00) exclusive of interest and costs together with interest and costs.

## COUNT II

**JEAN NEUPAUER**
v.
**THE UNITED STATES OF AMERICA,
MARIE ADAJAR, M.D. AND MOHAMMAD A. SHAIKH, M.D.**

59.     The allegations of the preceding paragraphs are incorporated by reference and made a part hereof as if herein set forth at length.

60.     As a direct and proximate result of the conduct of the Defendants, either individually and/or jointly and severally, Jean Neupauer, the wife of Gary Neupauer, Jr. has suffered loss of consortium, including but not limited to, the loss of comfort, aid, society and companionship of her husband, Gary Neupauer, Jr.

WHEREFORE, Jean Neupauer demands judgment against the The United States of America, Department of Veterans Affairs, Marie Andajar, M.D. and Mohammad A. Shaikh, M.D. individually and/or jointly and severally in an amount in excess of Seventy-Five Thousand Dollars, ($75,000.00) exclusive of interest and costs together with interest and costs.

> Respectfully Submitted,
> The Foley Law Firm
>
> /s/ Kevin P. Foley
> Kevin P. Foley, Esquire
> 220 Penn Avenue
> P.O. Box 1108
> Scranton, PA 18501-1108
> Phone: (570) 342-8194
> Attorney ID    #53067
> Attorney For Plaintiffs

## VERIFICATION

I, Gary Neupauer, HEREBY VERIFY that I have read the foregoing Complaint and that insofar as it is based upon information within my own knowledge, it is true and correct and insofar as it is based upon the expertise of counsel, we have relied upon counsel in making this Verification. The language of the pleading is that of counsel and not my own. I understand that this Verification is made subject to the provisions of 18 Pa. C.S. § 4904 pertaining to Unsworn Falsification to Authorities.

_____
Gary Neupauer